IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| V. | § | CRIMINAL ACTION NO. H-03-346-1 |
| | § | CIVIL ACTION NO. H-14-207 |
| JOHN CALLEN, JR., | § | |
| | § | |
| Defendant-Movant | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2255 is Movant John Callen, Jr.'s § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No.277),[1] and Supplement to § 2255 Motion (Document No. 274), the United States's Answer and Motion to Dismiss Movant's § 2255 Motion (Document No. 277), Movant's Response to the Government's Motion to Dismiss (Document No. 283), and Motion for Leave to File Addendum to Pending § 2255 Motion and Supplement to § 2255 Motion (Document No. 286). After reviewing the parties' submissions, the record of the proceedings before the District Court in the underlying criminal case, and the applicable case law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that the Government's Motion to Dismiss (Document No. 277) be GRANTED, and that Movant John Callen, Jr.'s § 2255 Motion (Document No. 277), Supplement to § 2255 Motion (Document No. 274), and Motion for Leave to File Addendum (Document No. 286) all be DENIED.

---

[1] John Callen, Jr.'s Motion to Vacate, Set Aside or Correct Sentence can be found at Document No. 1 in Civil Action H-14-207 and at Document No. 277 in Criminal Action No. H-03-346.

## I.     Procedural History

Movant John Callen, Jr. ("Callen"), who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C.§ 2255.  This is Callen's first attempt at § 2255 relief.

On September 3, 2003, Callen, Maximiano De Leon, and Fidencio Chapa Jr. were charged by Indictment with drug trafficking activities.  (Document No. 1).  Callen was charged with conspiracy to possess with intent five (5) kilograms or more of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)(ii) (Count One), possession with intent to distribute five (5) kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii) and 18 U.S.C. § 2 (Count Two), and laundering of monetary instruments in violation of 18 U.S.C. §§ 2 and 1956(a)(1)(A)(I) (Count Three).  (Document No. 1).  On February 7, 2012, Callen pleaded guilty to the Indictment (Counts One-Three) without a written plea agreement.  (Document No. 217, Transcript of Rearraignment, Document No. 255).  The transcript of Callen's Rearraignment shows that he understood the charges against him, the rights he would give up if he pleaded guilty, the possible penalties, and the sentencing process. (Document No. 255, p. 6-16).  The record further reflects that the Government summarized what it was prepared to prove if the case proceeded to trial. (Document No. 173, p.16-20). The Prosecutor stated:

> Your Honor, I listed—I'll try to summarize this: that witnessed would be presented that would testify that on or about July the 10th, 2003, agents of the Department of Homeland Security had received information regarding a person who was suspected of drug traffic by the name of Max DeLeon.
>
> Based upon the information that was provided, agents began surveillance of Mr. DeLeon and were led to a storage facility that he maintained here in Houston, on South Loop East here in Houston.  Based upon that, the agents set up a pole cam and began watching him for several days.
>
> On or about August the 5th, 2003, the date of this offense, while conducting

surveillance of Mr. DeLeon at his home, Mr. DeLeon was observed departing his residence and traveling to that storage facility in a dark blue mercury Sable. This surveillance included vehicles occupied by agents as well as helicopter surveillance.

The following events were all captured on videotape: that at approximately 1:52 p.m., Mr. DeLeon entered into the Space Saver Storage unit. He was then observed by agents leaving that unit and subsequently loaded a black–what appeared to be a black gym [bag] back into the trunk of the Mercury Sable.

He was the sole occupant of the vehicle, and the vehicle was registered to him. Mr. DeLeon was then followed traveling to a Wendy's restaurant, which was in the northwest part of Houston up on Louetta Drive in Cypress, Texas.

There he was met — he met with another individual, another co-Defendant, Mr. Fidencio Chapa. Mr. Fidencio Chapa had arrived in a maroon GMC pickup. Mr. DeLeon was then observed giving the keys to this Mercury Sable to Mr. Chapa. Mr. Chapa then drove off alone and then was followed to a residence located at 59 Wincrest Falls in Cypress, Texas, later the residence of — or the place where Mr. — the Defendant, Mr. Callen, resided at the time.

At approximately 2:48 p.m., Mr. Chapa, after he arrived at that location, was observed entering into the residence. He later returned to the blue Mercury. At that time Mr. Chapa carried a black bag from outside of the garage and placed it into the trunk of the Mercury.

As Mr. Chapa departed the residence, the Defendant, John Callen, was seen on the videotape exiting the garage, looking around, and then he walked back in. Subsequently, Mr. Chapa who was — after he left the residence, was stopped by the officers.

Mr. Chapa was told that they were being— he was being investigated for drug trafficking activity. He requested and subsequently received a written consent from Mr. Chapa to search the Mercury. Inside of the Mercury, the officers located a black Sharper Image bag which appeared to be the bag that was captured on videotape.

Inside that bag contained $247,000 in United States currency in the trunk. Mr. Chapa who would be willing– who would be presented as the witness will testify that the money was payment for 14 kilograms of cocaine that he had just delivered to Mr. John Callen that day.

He would also testify that he has made previous deliveries of controlled substances to Mr. Callen at the residence and that payment was always made in United States currency. Mr. Chapa will testify that he intended to transfer the money from Mr. Callen to the supplier of the drugs, Mr. DeLeon, which would allow Mr. DeLeon to transfer the money to others in furtherance of the drug trafficking conspiracy. Mr.

Chapa will also testify that, to his knowledge, Mr. Callen's primary source of income was derived from drug trafficking.

Having maintained constant surveillance at 59 Wincrest, agents and officers observed a female, later identified as Deborah Wright, depart the residence accompanied by two children. Her vehicle was approached, and the agents and officers prior to— and the agents and officers approached her. She subsequently gave a consent to search the residence at 59 Wincrest Falls.

A short time later, John Callen was observed trying to depart the residence, as well. Both Ms. Wright and Mr. Callen were escorted back to the residence.

Harris County— a search of the property located at 59 Wincrest Falls resulted in the seizure of 14 kilograms of cocaine inside of a black gym bag which had been located over the back fence. This bag, I anticipate, would be— the agent—the witnesses would testify was similar in appearance to the bag that had previously been observed taken from the Space Saver unit by Mr. DeLeon. Also, Mr. Chapa would say that that looks like the bag that he delivered containing the 14 kilos of cocaine to Mr. Callen that day.

There was also one kilo of heroin that was located in the area– in the same general area across from the fence. And also, additionally, there were 14 live marijuana plants growing in the back yard which, subsequently, Mr. Callen stated that he – not only that he knew about but took ownership of. There were also several firearms that were found in the house.

During the course of the consent search of the residence, agents and officers located two open safes in the back room. Within one of the safes was a black garbage bag containing approximately $170,692 in United States currency. This currency was rubber-banded with bundles and was consistent with the money that was seized from the back of the Mercury and was also– based upon those officers who would testify is consistent with the way proceeds for money laundering– I mean, from drug packaging are normally packaged. Also, a Houston narcotics dog alerted on that money and – for a positive sign of drugs.

Additionally, in the master bedroom closet, officers found–located six firearms along with ammunition for those weapons and another firearm which was located in a television room.

The seized drugs were submitted to the DEA in Dallas; and a report dated August the 20th of 2003 by the DEA analyst concluded that the seized substance was, in fact, cocaine hydrochloride and the amount was more than five kilograms. (Document No. 255, p. 16-20).

In response, Callen confirmed the accuracy of the summary and his role in the offense. (Document

No. 255, p. 20-21).

Prior to sentencing, a Pre-Sentence Investigation Report ("PSR") was prepared.  (Document No. 222), to which Callen filed written objections (Document No. 226) and Sentencing Memorandums. (Document No. 219, 220).   The record shows that the Callen had an initial offense level of 34 under U.S.S.G. § 2D1.1(c)(3).[2]  Because firearms were found in the residence under U.S.S.G.  § 2D1.1(b)(1), his offense level was increased by two levels, which resulted in a base offense level of 36.   Because Callen was convicted of money laundering, his offense level was increased two levels under U.S.S.G. §2S1.1(b)(2)(B).   Because Callen accepted responsibility for this criminal conduct, his offense level was reduced two levels under U.S.S.G. § 3E1.1(b).[3]   With an adjusted offense level of 36, and with a criminal history category of I, Callen  had an advisory

---

[2] According to the PSR, Houston Police Officers conducted a search of the residence at 59 Wincrest Falls, Houston, Texas.  Callen and Deborah Wright were present during the search. With respect to items seized, the PSR states in pertinent part:

18.  Inside the master bedroom, the officers found two open safes in a master bedroom closet.  Inside one safe was a bag containing approximately $163,692 in U.S. currency, bundled with rubber bands. A night stand beside the bed contained $5,000 in bundled U.S. currency, and another night stand contained $2,000 in bundled U.S. currency.  The total of currency seized was $170,692.  In addition to the money seized, the officers found six firearms in the master bedroom closets and night stands.  In the television room, the officers found a firearm under a couch and two grams of cocaine in a bag.

19.  The search of the residence at 59 Wincrest Falls yielded 15 kilograms of cocaine. Fourteen (14) of the 15 kilograms of cocaine were found inside of a black gym bag laying along the rear fence of the property, while the last kilogram of cocaine was found approximately 20 yards from the 14 kilograms of cocaine. Later, laboratory analysis revealed approximately one kilogram of heroin was contained along with the cocaine.  Fourteen (14) live marijuana plans, weighing approximately 36 pounds, were removed from the middle of the backyard where they were growing.  (Document No. 222).

[3] Because Callen pleaded guilty the day of trial and had not assisted authorities in the investigation or prosecution, he was not eligible for a one point reduction under U.S.S.G. § 3E1.1(b).

guideline sentencing range of 188 to 235 months.

At Callen's June 29, 2012, sentencing hearing, Judge Harmon questioned Callen about whether he had read over the PSR, whether he had discussed the PSR with counsel, whether he had any questions about the report, and whether he had any objections to the PSR that he would like to voice. Callen confirmed that he had read and discussed the PSR with counsel and had no objections he wished to voice. (Document No. 231, Transcript of Sentencing, Document No. 271, p.3-4). Judge Harmon sentenced Callen to a total term of imprisonment of 188 months, to be followed by a five-year term of supervised release, a $5,000 fine and a special assessment of $300. (Document No.231, Transcript of Sentencing Hearing, Document No. 271, p. 8-13). In imposing a 188-month sentence, Judge Harmon stated:

> John Callen is before the Court for the offense of conspiracy to possess with intent to deliver a controlled substance, cocaine, for Count 1; possession with intent to deliver a controlled substance, cocaine, Count 2; and laundering of monetary instruments, Count 3.
>
> As is reflected in the offense conduct section of the presentence report, Mr. Callen was one of three Defendants involved in the trafficking of cocaine. During the search of his home, agents discovered cocaine, marijuana, firearms, a large amount of money and heroin.
>
> The total amount of marijuana that these substances and monetary amounts equate to is 5,408.4 kilograms. He became a fugitive shortly after he was detained in 2003 and released upon a promise to cooperate and was not apprehended until January 24, 2011. During the apprehension, he presented a false identification card and was in possession of a large amount of currency along with scales inside a rented vehicle.
>
> I believe that taking into account this–this crime and all– and the fugitive status and his age, I believe that a sentence within the guidelines is appropriate on each count to run concurrently to each other and that such a sentence is sufficient but not greater than necessary to fulfill the provisions of 3553(a). (Document No. 271, p. 8-9).

An Amended Judgment was entered on July 20, 2012. (Document No.239). Callen appealed his sentence to the Fifth Circuit Court of Appeals. (Document No.235). On July 12, 2013, the Fifth

Circuit affirmed his conviction and Judgment.  (Document No. 258, 259).  The Fifth Circuit wrote:

> John Callen, Jr., appeals his conviction, following his guilty plea, for conspiracy to distribute cocaine, possession of cocaine with intent to distribute, and money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(I) and 21 U.S.C. § 841(a)(1) and (b)(1)(A)(ii).  Callen argues that the district court erred when it denied his motion to dismiss the indictment, which was based on his constitutional right to a speedy trial.
>
> Callen pleaded guilty without a written plea agreement.  The transcript of his rearraignment indicates that Callen's guilty plea was unconditional.  Although Callen's counsel expressed an intent to appeal the denial of Callen's speedy trial act motion, he did not obtain the consent of the court or the government.  Nor was Callen's purported reservation of appeal reduced to writing.  "Because there is no indication in the record that the government or the district court consented to a conditional plea," we must conclude that Callen's plea was unconditional.  *United States v. Stevens*, 487 F.3d 232, 240 (5th Cir. 2007).  An unconditional guilty plea "has the effect of waiving all non-jurisdictional defects in the prior proceedings," *Id.* at 238, including any claim of a speedy trial violation, *United States v. Bell*, 966 F.2d 914, 915 (5th Cir. 1992).  Accordingly, Callen has waived his speedy trial act claim. (Document No. 258).

Callen filed a petition for certiorari.  The United States Supreme Court denied his petition on November 18, 2013.  (Document No. 262).  Callen had one year from the denial of certiorari to file a § 2255 motion or until November 18, 2014.  On or about January 30, 2014, Callen timely filed the instant § 2255 motion (Document No.260), and a timely Supplement to his § 2255 Motion (Document No. 274) on or about July 21, 2004.  Callen argues that he was denied his constitutional right to effective assistance of counsel at trial and on appeal.  The Government has answered  and has moved to dismiss Callen's § 2255 motion.  The Government maintains that neither trial counsel nor appellate counsel were deficient and even assuming that Callen could show deficiency on the part of either trial or appellate counsel, he has not and cannot show he was prejudiced by the alleged deficiencies.

## II.  Discussion

### A.  Ineffective Assistance of Counsel claims

Claims of ineffective assistance of counsel are generally measured by the standard of *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Strickland*, 466 U.S. at 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id*. at 687-88. The prejudice element requires a petitioner to prove that absent the disputed conduct of counsel, the outcome would have been both different and more favorable. *Id*. at 694-95. Under *Strickland*, a petitioner must establish both deficiency and prejudice prongs to be entitled to habeas relief. The failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *United States v. Seyfert,* 67 F.3d 544, 547 (5th Cir. 1995).

Under the deficiency prong of *Strickland*, judicial scrutiny of counsel's performance is "highly deferential" and "a strong presumption" is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1064-65 (5th Cir. 1992), *cert. denied,* 509 U.S. 921 (1993) (citing *Strickland*). To overcome the presumption of competence, the petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland,* a petitioner must be able to establish that absent his counsel's deficient performance, the result of his trial could have been different. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. When ineffectiveness claims relate to counsel's performance at sentencing, as raised herein, *Strickland's* deficiency prong is met when counsel fails to "research facts and law and raise meritorious arguments based on controlling precedent. *United States v. Fields*, 565 F.3d 290, 296

(5th Cir.), *cert. denied*, 558 U.S. 914 (2009)(citing *United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003)). In addition, "'any amount of [additional] jail time has Sixth Amendment significance.'" *Lafler v. Cooper*, ___U.S.___, 132 S.Ct. 1376, 1386 (2012)(quoting *United States v. Glover*, 531 U.S. 198, 203 (2001)). Counsel is not required to "anticipate changes in law or raise meritless objections." *Fields*, 565 F.3d at 296.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. The determination of whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record. Each case is judged in light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied,* 467 U.S. 1220 (1984). The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland,* 466 U.S. at 690. "We will not find inadequate representation merely because, with the benefit of hindsight, we disagree with counsel's strategic choices." *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999) (quoting *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997)). Conclusory allegations of ineffective assistance of counsel do not raise a constitutional question in a federal habeas petition. *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir), *cert. denied*, 531 U.S. 849 (2000) (citing *Barnard v. Collins,* 958 F.2d 634, 642 (5th Cir. 1992); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

The United States Supreme Court in *Harrington v. Richter*, ___U.S.___, 131 S.Ct. 770, 778 (2011) discussed *Strickland* in the context of a habeas proceeding involving a state conviction. While *Harrington* did not involve a federal habeas proceeding involving a federal conviction, the Court's discussion of *Strickland* and ineffective assistance of counsel claims is instructive and equally applies to claims brought in a federal habeas proceeding such as those raised herein.

With respect to ineffective assistance of counsel claims, the Court observed that "[t]here are, [ ] 'countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.' Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach." *Id.* at 788-89 (quoting from *Strickland*, 466 U.S. at 689). As a result, counsel's performance does not fall below that guaranteed by the Sixth Amendment where it can be shown that counsel formulated a strategy that was reasonable at the time and balanced limited resources with effective trial tactics and strategies. *Harrington*, 131 S.Ct. at 789. "Just as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington*, 131 S.Ct. at 791. Moreover, "it is difficult to establish ineffective assistance when counsel's *overall* performance indicates active and capable advocacy." *Harrington*, 131 S.Ct. at 791 (emphasis added). Finally, in considering the prejudice prong of *Strickland*, the likelihood of a different result must be substantial, not just conceivable. *Id.* at 791-792 (Citations omitted). As a result, "'[s]urmounting *Strickland's* high bar is never an easy task.'" (quoting from *Padilla v. Kentucky*, 559 U.S. 356, 371(2010)). In part, because:

> Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom.

*Harrington*, 131 S.Ct. at 778 (citations omitted). The *Strickland* standard applies to ineffective assistance of appellate counsel claims. *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

Callen claims that his trial counsel was ineffective for failing to inform him of the legal

definition of "mixture or substance."  Even assuming that counsel did not define "mixture or substance" as alleged by Callen, he has not shown prejudice within the meaning of *Strickland*.  The Indictment clearly states that Callen was charged with conspiracy to possess 5 kilograms or more of cocaine (Count One) and possession with intent to distribute 5 kilograms or of cocaine (count two).  Moreover, the transcript of his Rearraignment shows that he was advised of the elements of the offense and was aware that the substance charged was cocaine. (Document No. 255, p. 13-15).  Callen's conclusional claim fails.

Callen next alleges that his counsel was ineffective for failing to explain how the Sentencing Guidelines applied in his case, including relevant conduct.  According to Callen, he was not told that he could be punished for uncharged heroin distribution and marijuana distribution when he was pleading guilty to cocaine distribution.  The record refutes this claim.  At his Rearraignment, Callen stated that he had discussed with his trial counsel the application of the sentencing guidelines. (Document No. 255, p. 8).  In addition, Judge Harmon explained the sentencing process, including the guidelines.  Callen was advised that the Court could not tell him what his sentence was going to be, that a PSR would be prepared by a probation officer and that objections could be filed to the report, and that the objections would be ruled on at a sentencing hearing.  (Document No. 255, p. 8-10).  Callen affirmatively stated that he understood the sentencing process, and in particular, that his sentence could not be determined at the time of his Rearraignment.  As such, to the extent that Callen claims that his counsel told him that this offense level would be 32 if he pleaded guilty, or failed to explain the guidelines, his claims are undermined by the plea colloquy.  (Document No. 255, p. 9-10). "The fact that the applicable range of the U.S. Sentencing Guidelines was not known at the time of the plea proceeding, which is not surprising inasmuch as the [PSR] had not yet been prepared, does not cast aspersions on the validity of" Petitioner's guilty plea.  *Deckard v. United States*, Civil

Action No. 9:07cv106, Crim. No. 9:01cr41, 2008 WL 2714106, at *17 (E.D.Tex. July 9, 2008).

As for Callen's ineffectiveness claims raised for the first time in his Response to the Government's Motion to Dismiss (Document No. 283), namely that counsel was ineffective for failing to seek a more favorable plea deal; failing to obtain a written agreement; and the timing of the plea, Callen makes no arguments in support of his claims, and his assertions are conclusory at best. The law is clear that "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029,1043 (5th Cir. 1998).

Callen next alleges that counsel was ineffective for failing to familiarize himself with the Sentencing Guidelines, which resulted in a misapplication of the Guidelines by the Court. According to Callen, he received a higher base offense level and a higher sentence. The record undermines Callen's claims. The record shows that counsel filed written objections to the PSR, and at the Sentencing Hearing, argued for a sentence at the low end of the advisory guideline sentencing range. (Document No. 226).

Callen also argues that counsel could have and should have objected to the enhancements for firearm possession. The record shows that Callen admitted to the firearms and drugs at his Rearraignment. Both firearms and narcotics (marijuana plants, cocaine, and heroin mixed in with cocaine) were seized during a consensual search of his residence. (Document No. 255, p. 19-20; Document No. 222, ¶18 & 19). The law is clear that counsel is not ineffective for failing to raise meritless objections. *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998).

Callen next alleges that counsel was ineffective at sentencing by failing to call as a witness, Deborah Wright, at sentencing. According to Callen, Deborah Wright would have testified that he was not guilty of heroin distribution, marijuana distribution or distributing cocaine in amounts

greater than 15 kilograms and would have further testified that Callen was only guilty of distributing 5 kilograms or more of cocaine.  Callen contends that had Deborah Wright testified, his Guideline offense level would have been lower.  "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Schwander v. Blackburn*, 750 F.2d 494, 500 (5thCir. 1985); *Bray v. Quarterman*, 265 Fed. Appx. 296, 298 (5th Cir. 2008).  Other than naming Deborah Wright as a potential witness, and briefly describing her testimony, Callen has not shown that Deborah Wright was available to testify and would have done so, or shown that the particular testimony would have been helpful to the defense.  Moreover, to rebut information contained in a PSR, the "rebuttal evidence must demonstrate that the information contained in the PSR is 'materially untrue, inaccurate or unreliable[.]'" *United States v. Huerta*, 182 F.3d 361, 364 (5th Cir. 1999)(quoting *United States v. Parker*, 133 F.3d 322, 329 (5th Cir. 1998)).  Here, Callen has not shown that the testimony would have shown that the PSR was untrue, inaccurate, or unreliable.  As such, Callen has not shown that the failure to call Deborah Wright as a witness at his sentencing hearing constituted ineffective assistance of counsel.

Callen also alleges that counsel was ineffective at sentencing for failing to request an additional point for acceptance of responsibility.  According to Callen, his plea was timely and it is likely that had counsel requested an additional point, the Court would have granted his request.  Callen pleaded guilty the day of trial.  Because the Government had prepared for trial, it objected to an additional point for acceptance of responsibility under U.S.S.G. § 3E1.1. (Document No. 222, § 45 and Document No. 271, p. 507).  Callen has not shown his eligibility for a third point of acceptance of responsibility.  The "[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite." *See Clark v. Collins,* 19 F.3d 959, 966 (5th Cir. 1994).

Callen alleges that appeals counsel was ineffective for failing to appeal. Callen claims that no appeal was filed. The record shows otherwise. Counsel filed a Notice of Appeal (Document No. 235). Callen's assertion that he was "abandoned" by counsel is wholly conclusory and unsupported by the record.

Callen also alleges that appeals counsel was ineffective for failing to raise on appeal the issue of "illegal activity occurring at sentencing." Callen's assertion is wholly conclusory and he fails to assert any facts in support of his argument.

Callen alleges that counsel was ineffective for failing to preserve his speedy trial issue for appeal. According to Callen, counsel insisted that if he pleaded guilty he could still appeal his speedy trial claim. Callen argues that had counsel followed through with what he suggested he would do at this Rearraignment, and properly appealed the denial of the motion to dismiss the indictment, the Fifth Circuit would have likely reversed Judge Harmon's ruling and his Indictment would have been dismissed. Callen contends that had he known that he "was waiving his appellate rights, he would not have pled guilty." (Document No. 274, p. 4).

As discussed above, Callen pleaded guilty without a written plea agreement. The transcript of Callen's Rearraignment hearing shows that counsel clearly expressed that he intended to appeal the Court's denial of his motion to dismiss for lack of speedy trial. Counsel stated:

> Mr. Merchant: And I kind of wanted– I know, since we're pleading guilty, this may not be timely at this point; but I just wanted to let the Court know that he – we would be appealing the denial of the motion to suppress. And so, I just wanted to give the Court and the State—the Government notice, and I will follow that up with something in writing, but I just wanted to let the Court know. Other than that, we are ready to enter a plea. (Document No. 255, p. 3).

However, counsel neither obtained the consent of the court or the government to appeal the denial of the motion nor reserved the right to appeal in writing. Even assuming that Callen has shown the

counsel's failure to preserve the speedy trial issue was objectively deficient, he has failed to demonstrate prejudice under *Strickland.*

Assuming that counsel had preserved Callen's speedy trial claim, the Fifth Circuit would have reviewed the district court's legal conclusions de novo, and the factual findings for clear error. *United States v. Bishop*, 629 F.3d 462, 465-66 (5th Cir. 2010). Specifically, for the factual findings, the Fifth Circuit would have "defer[ed] to the findings of the district court unless we are left with a definite and firm conviction that a mistake has been committed." *United States v. Avants*, 367 F.3d 433, 441 (5th Cir. 2004)(citation and internal quotation marks omitted).

Callen before the trial court alleged that his Sixth Amendment right to a speedy trial had been violated due to the excessive delay of seven years between the filing of the Indictment on September 3, 2003, and trial setting of December 5, 2011. Callen moved to dismiss the Indictment based on the delay. (Document No. 180). The Government opposed the motion. According to the Government's filing, any delay was attributable to Callen having been a fugitive living under an assumed name, and once he was taken into custody and returned to the Southern District of Texas, four continuances of trial were filed by counsel, and there was a change of counsel, and another continuance. (Document No. 191). Hearings were held on November 18, 2011, and December 5, 2011, at which testimony was taken of federal agent, Matthew Picken, and United States Deputy Marshal Steve Venglar, concerning attempts by law enforcement to find and arrest Callen, who had gone missing from the Southern District of Texas in September 2003. (Document No. 245 & 252). On December 12, 2011, Judge Harmon, applying a four-factor balancing test set forth the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530-33 (1972), denied Callen's Motion to Dismiss and for Continuance. (Document No. 208). The Court wrote:

Defendant John Callen has brought a motion to dismiss the indictment against him

under the speedy trial clause of the sixth amendment to the Constitution of the United States. (Doc. 180). Defendant was indicted along with two co-defendants September 3, 2003 for conspiracy to distribute a controlled substance, a violation of 21 U.S.C. Secs. 841(a)(1) and 841(b)(1)(A)(ii) and 846 and with possession with intent to distribute a controlled substance, a violation of 21 U.S.C. Sec. 2.

Defendant argues that he was arrested on or about August 5, 2003. For unknown reasons the United States Attorney declined to prosecute at that time, and Defendant was released from custody. On or about August 15, [2]003 a criminal complaint was filed, and later, on September 3, 2003 Defendant was indicted, and a bench warrant was issued for his arrest. Mr. Callen could not be found, and he was not arrested until January 24, 2011 when he was located in Detroit, Michigan, living under the assumed name Andre Deon White.

The parties agree that there are four factors courts examine to determine whether a defendant's Sixth Amendment right to a speedy trial has been violated: (1) whether there was an "uncommonly long delay"; (2) whether the government or the defendant is more to blame for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the defendant has been prejudiced as a result of the delay. *Doggett v. United States*, 505 U.S. 647, 651 (1992), citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *United States v. Bergfeld*, 280 F.3d 486, 488 (5th Cir. 2002).

On November 18, 2011 the Court held a hearing on the motion to dismiss at which the testimony of a federal agent, Matthew Picken, was taken. Mr. Picken testified to the circumstances of the Defendant's first arrest and the issuance of the bench warrant and its unsuccessful service on Defendant in September 2003. Through Mr. Picken's testimony the false identification the Defendant presented to authorities, when he was successfully arrested on the bench warrant in Detroit on January 24, 2011, was introduced as Government's exhibit 1. Because the defendant wanted to review the record of the efforts taken by law enforcement to apprehend the Defendant between September 2002 and January 24, 2011, the Court recessed the hearing until December 5, 2011. Mr. Picken resumed the stand and testified in detail to the efforts taken by law enforcement to find and arrest the Defendant. United States Deputy Marshal Steve Venglar also testified to the efforts of the Marshal's Service. The pertinent records were introduced as Defendant's 2 and 3 and filed under seal. The case was taken under advisement.

There is no argument that the delay is overlong. The primary issue here falls under the second factor of the four factor test, whether the Government or the Defendant is more responsible for the delay. The Government argues that the Defendant was a fugitive from justice living in Detroit, Michigan under an assumed name for the period between sometime in September 2003 and his arrest at the end of January, 2011. As such he was successfully hiding from arrest. The United States did not know where he was and could not arrest him and bring him to a speedy trial. The

Government was duly diligent over the expanse of years to make sure the warrant was still good and to check if there was any lead they could follow to find the Defendant. Eventually their patience paid off. The fact that Defendant was not found was not the fault of the Government, but entirely the fault of the Defendant.

Defendant also argues that he suffered prejudice because in the years between indictment and arrest most of the cocaine that is the subject of the indictment was destroyed. The Government kept only representative samples. Destruction of the bulk of the drugs has resulted in hampering the Defendant's ability to challenge the substance's true nature and to rebut the expert chemist's testing report. The Court finds that although the destruction of the bulk of the drugs may represent some prejudice to the Defendant, such prejudice as there may be is slight.

Finally a word must be said about factor three, Defendant's assertion of his right to a speedy trial. The Defendant's first trial date was set May 16, 2011 (Doc. 146). The Defendant's first attorney, appointed under the Criminal Justice Act to represent him, filed on March 16, 2011 the first of four motions to continue his case (Docs 148, 161, 164, and 167), all of which were granted by the Court. On September 2, 2011 this first lawyer moved to withdraw (Doc. 169). On September 8, 2011 Defendant's current attorney was appointed to represent him. On September 15, 2011 this attorney moved to continue the trial, which continuance was opposed by the Government. The Court granted the continuance and set the trial date for December 5, 2011, a date mutually agreeable to the parties (Doc. 174). From March 16, 2011 until October 26, 2011, when the instant motion was filed, there was no assertion of a right to a speedy trial. Defendant argues that he is not complaining about this seven month delay, but about the time period between his September 3, 2003 indictment and January 24, 2011 apprehension. This factor is a neutral one in the Court's decision, but it is worth noting.

The Defendant John Callen has not shown that he has been denied his Constitutional Right to a speedy trial because the cause of the delay in getting this case to trial is the fault of the Defendant and not the fault of the United States. (Document No. 208).

Given the detailed factual findings by Judge Harmon, that were specifically tied to *Barker* factors, and the ultimate determination that any delay in getting the case to trial was attributable to Callen and was not the fault of the Government, Callen has not and cannot show that the Fifth Circuit would have found that he was entitled to relief under the Sixth Amendment right to a speedy trial and the Fifth Amendment Due Process clause.

In conclusion, Callen has offered no proof of how either trial counsel or appellate's counsel's

performance was objectively deficient, and no proof that such deficient performance prejudiced him in any way.  *See Strickland*, 466 U.S. at 687.  Thus no relief is available under § 2255 on Callen's ineffective assistance of counsel claims.

     B. Motion for Leave to File an Addendum to Pending § 2255

     Callen has moved to file an Addendum to Pending § 2255 motion.  (Document No. 286). To the extent that Callen raises arguments related to and amplifying his speedy trial claims, the arguments have been considered by the undersigned and are without merit for the reasons set forth above.

     To the extent that Callen raises new issues, (grounds 5, 6, 7, 8, 9), his Motion to file an Addendum should be dismissed because the claims are time-barred.

     On April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted.  Pursuant to § 2255(f), the one-year limitation period begins to run from the latest of:

     (1) the date on which the judgment of conviction becomes final;

     (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such governmental action;

     (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

     (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

     Because Callen filed the instant § 2255 motion after the effective date of AEDPA, the provisions of the statute apply.  Callen's conviction became final on or about November 18, 2013, and expired one year later on or about November 18, 2014.  *See Griffin v. Kentucky*, 479 U.S. 314,

321 n. 6 ("By 'final,' we mean a case of which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied."); *United States v. Scruggs*, 691 F.3d 660, 669 (5th Cir. 2013).  Callen's additional  claims raised in his January 22, 2015, filing, nearly two months, after the expiration of the one-year limitations period.  Thus under these circumstances, Callen's additional claims are untimely under § 2255(f)(1), and are subject to dismissal absent a showing that an alternate date for commencement of the limitations period should be applied under § 2255(f)(2)-(4) or that the limitations period should be equitably tolled.  To the extent that the additional claims clarify or amplify a claim or theory that he raised in this timely filed §2255 Motion, the speedy trial related issues are subject to dismissal for the reasons set for above.  Callen's additional claims are subject to dismissal because none of the alternate dates for commencement of the limitations period apply and he has not shown that the limitations period should be equitably tolled.  *See United States v. Thomas*, 221 F.3d 430, 433-34 (3rd Cir. 2000); *United States v. Duffus*, 174 F.3d 333(3rd Cir.), *cert. denied*, 528 U.S. 866 (1999).  A movant cannot circumvent AEDPA by filing a "place holder" § 2255 motion then later rely on Federal Rule of Civil Procedure 15(c) to add additional claims after the one year limitations period expires.  Courts have characterized such preliminary § 2255 motions as "place holders."  "A 'placeholder motion is a skeletal document filed to satisfy the period of limitations, with the intent of filing a real or completed petition at a later date." *United States v. Jackson*, Cr. No. 0:98:1126-JFA, 2006 WL 5083826 (D.S.C. Dec. 8, 2006).

As for the alternative commencement dates for the one year limitation period provided for in § 2255(f)(2), (3), and (4), none applies.  Callen has not alleged that he was in any way impeded from including the claims in his timely filed § 2255 motion.

Furthermore, upon this record Callen has not shown that the limitations period should be

equitably tolled.  The law is clear that only rare and exceptional circumstances may warrant the application of equitable tolling principles to an untimely filed claims under § 2255 Motion to Vacate, Set Aside or Correct Sentence.  *United States v. Petty*, 530 F.3d 361, 364-65 (5th Cir. 2008); *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000).  Equitable tolling, however, is not available if the Movant does not act diligently in attempting to meet the one year limitations deadline.  *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000).  Additionally, the Fifth Circuit has approved the application of equitable tolling in very limited circumstances, "'principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his right.'"  *Fierro* v. *Cockrell*, 294 F.3d 674, 682 (5th Cir. 2002)(quoting *Coleman*, 184 F.3d at 402.  The Fifth had disapproved of the application of equitable tolling for circumstances which are "garden variety claims of excusable neglect."  *Lockingbill v. Cockrell*, 239 F.3d 256, 265 (5th Cir. 2002).  The Movant must show "'that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented a timely filing.'"  *Holland v. Florida*, 130 S.Ct. 2549, 2562 (2010)(quoting *Pace v. DiGugielmo*, 544 U.S. 408, 418); *see also Lawrence v. Florida*, 549 U.S. 327, 336 (2007).

Here, Callen has filed his additional claims too late.  Given the absence of any facts in the record which would constitute rare and exceptional circumstances, equitable tolling of the limitations period is not applicable.

Because Callen's additional claims were not timely filed and because there are no grounds available to toll the limitations period, his Motion for Leave to file Addendum to Pending § 2255 Motion (Document No. 286) should be denied as time-barred.

## III.  Conclusion and Recommendation

Based on the foregoing, it is

RECOMMENDED that the Government's Motion to Dismiss Movant's § 2255 Motion (Document No. 277) be GRANTED, and that Movant's § 2255 Motion (Document No. 260), Supplement to § 2255 Motion (Document No. 274), and Motion for Leave to File Addendum tp § 2255 Motion (Document No. 286) all be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas.  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 10th  day of March, 2015.


Frances H. Stacy
United States Magistrate Judge